FILED

DEC 1 8 2024

U. S. DISTRICT COURT
EASTERN DISTRICT OF MO
ST. LOUIS

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

UNITED STATES OF AMERICA, )
)
Plaintiff, )
)
v. )
) **4:24CR661 MTS/JSD**
MICHAEL P. GARCIA, )
)
Defendant. )

**INDICTMENT**

The Grand Jury charges that:

**INTRODUCTION**

At all times material to this Indictment, unless otherwise specified below:

1.    Defendant MICHAEL P. GARCIA ("GARCIA") was a resident of Miami, Florida.

2.    Andy Miqui-Castillo ("Miqui-Castillo") was a resident of East Orange, New Jersey.

3.    FedEx Corporation ("FedEx") was a company based in Memphis, Tennessee that offered delivery services throughout the United States and was a commercial interstate carrier, as that term is used in Title 18, United States Code, Section 1341.

4.    Uber Technologies, Inc. ("Uber") was a company based in San Francisco, California that offered ride-hailing services throughout the United States through a mobile application on users' mobile devices.

5.    Zelle was a digital payments network utilized by multiple banks in the United States and that allowed users to electronically transfer money between bank accounts.

## COUNT 1
### Conspiracy to Commit Mail Fraud and Wire Fraud (18 U.S.C. § 1349)

### The Conspiracy

6.     Beginning no later than in or around October 2023, and continuing through at least in or around November 2023, in the Eastern District of Missouri and elsewhere, the defendant,

### MICHAEL P. GARCIA,

voluntarily and intentionally conspired, combined, and agreed with Miqui-Castillo and others, known and unknown to the Grand Jury, to commit the following offense against the United States:

a.     having devised and intended to devise a scheme and artifice to defraud and to obtain money and property by means of materially false and fraudulent pretenses, representations, and promises, for the purpose of executing such scheme, deposited and caused to be deposited any matter or thing to be sent and delivered by any commercial interstate carrier, and caused to be delivered by any commercial interstate carrier any matter or thing, that is, mail fraud, in violation of Title 18, United States Code, Section 1341; and

b.     having devised and intended to devise a scheme and artifice to defraud and to obtain money and property by means of materially false and fraudulent pretenses, representations, and promises, for the purpose of executing such scheme, caused to be transmitted by means of wire communication in interstate commerce signals and sounds, that is, wire fraud, in violation of Title 18, United States Code, Section 1343.

### Object of the Conspiracy

7.     It was the object of the conspiracy for GARCIA and his co-conspirators to defraud elderly victims throughout the United States, including the Eastern District of Missouri, into transmitting and providing money and other valuables, including gold bars, to conspirators.

2

## Manner and Means

8.     It was part of the conspiracy that conspirators contacted victims through various means, including by telephone calls and text messages, and made false representations in order to induce victims to provide money and valuables to conspirators.

9.     It was further part of the conspiracy that conspirators, through these false representations, caused victims to provide money and valuables to conspirators through various means, including in the form of cash, by sending cryptocurrency, and by purchasing gold bars that the conspirators retrieved, in person, from the victims.

10.     It was further part of the conspiracy that GARCIA and other conspirators acted as couriers, travelling to victims' residences, retrieving money and valuables from victims, and delivering the victims' money and valuables to conspirators.

11.     It was further part of the conspiracy that GARCIA recruited Miqui-Castillo to act as a courier and offered Miqui-Castillo money in exchange for traveling to victims' residences, retrieving money and valuables from victims, and delivering the victims' money and valuables to conspirators.

12.     It was further part of the conspiracy that GARCIA instructed Miqui-Castillo on where, when, and from whom to pick up money and valuables and where to deliver the money and valuables.

13.     It was further part of the conspiracy that GARCIA, Miqui-Castillo, and other couriers picked up money and other valuables, including gold bars, from victims, and delivered and caused to be delivered to conspirators, including via FedEx shipment, money and other valuables fraudulently obtained from victims.

14.     It was further part of the conspiracy that GARCIA caused payments through

3

various means, including electronic transfers, to Miqui-Castillo in exchange for picking up, delivering, and shipping the money and other valuables from victims.

15.     It was further part of the conspiracy that conspirators, including GARCIA and Miqui-Castillo, communicated with each other through various means, including text messages, about the scheme.

16.     It was further part of the conspiracy that GARCIA and other conspirators caused interstate wire communications and shipments and deliveries using commercial interstate carriers, including the following:

a.      Interstate wire communications, consisting of telephone calls, text messages, and other electronic communications between conspirators and from conspirators to victims;

b.      Interstate wire communications to airline servers, consisting of commercial airline bookings made for the purpose of traveling to victims' residences and retrieving money and valuables;

c.      Interstate wire communications to Uber servers, consisting of Uber ride bookings made for the purpose of traveling to victims' residences and retrieving money and valuables;

d.      Interstate wire communications, consisting of electronic payments between conspirators in exchange for picking up, delivering, and shipping the money and other valuables from victims; and

e.      Shipments and deliveries by FedEx, a commercial interstate carrier, consisting of shipments of gold bars fraudulently obtained from victims to conspirators.

17.     It was further part of the conspiracy that GARCIA participated in defrauding and

4

attempting to defraud at least four (4) victims of more than $550,000 in money and valuables.

*Victims J.H. and D.H. in Brooklyn, New York*

18.    It was part of the conspiracy that, in or around October 2023, conspirators, through false representations, caused Victims J.H. and D.H., elderly victims who resided in or around Brooklyn, New York, to provide money to conspirators.

19.    It was further part of the conspiracy that GARCIA offered money to Miqui-Castillo in exchange for traveling to the residence of Victims J.H. and D.H. and retrieving money and valuables from these victims.

20.    It was further part of the conspiracy that GARCIA instructed Miqui-Castillo on when, where, and how to retrieve money and valuables from Victims J.H. and D.H. and where to deliver the money and valuables to other conspirators.

21.    It was further part of the conspiracy that, between on or about October 30, 2023, and November 1, 2023, Miqui-Castillo, at GARCIA's direction, drove on multiple occasions from New Jersey, where he resided, to Brooklyn, New York for the purpose of retrieving cash from Victims J.H. and D.H., and then transporting that cash to conspirators.

22.    It was further part of the conspiracy that, on or about October 30, 2023, Miqui-Castillo retrieved approximately $20,000 in cash and gold bars from Victims J.H. and D.H. at their residence.

23.    It was further part of the conspiracy that, on or about the same date, Miqui-Castillo transported and delivered the approximately $20,000 in cash and gold bars fraudulently obtained from Victims J.H. and D.H. to conspirators located in New York.

24.    It was further part of the conspiracy that, on or about November 1, 2023, Miqui-Castillo retrieved approximately $30,000 in cash from Victims J.H. and D.H. at their residence.

5

25.    It was further part of the conspiracy that, on or about the same date, Miqui-Castillo transported and delivered the approximately $30,000 in cash fraudulently obtained from Victims J.H. and D.H. to conspirators located in New York.

26.    It was further part of the conspiracy that GARCIA transferred a total of approximately $1,000 via Zelle to Miqui-Castillo in exchange for retrieving and delivering cash and gold bars fraudulently obtained from Victims J.H. and D.H.

*Victim M.A. in Summerfield, North Carolina*

27.    It was part of the conspiracy that, in or around November 2023, conspirators caused Victim M.A., who resided in or around Summerfield, North Carolina, to provide gold bars to conspirators.

28.    It was further part of the conspiracy that GARCIA offered money to Miqui-Castillo in exchange for traveling to the residence of Victim M.A. and retrieving gold bars from this victim.

29.    It was further part of the conspiracy that GARCIA instructed Miqui-Castillo on when, where, and how to retrieve the gold bars from Victim M.A. and where to deliver the gold bars to conspirators.

30.    It was further part of the conspiracy that GARCIA purchased a commercial flight for Miqui-Castillo to travel from New Jersey, where he resided, to Summerfield, North Carolina, for the purpose of retrieving gold bars from Victim M.A. and then shipping the gold bars to conspirators.

31.    It was further part of the conspiracy that, on or about November 16, 2023, Miqui-Castillo took a commercial flight from New Jersey to Piedmont Triad International Airport in Greensboro, North Carolina.

32.    It was further part of the conspiracy that, on or about the same date, Miqui-Castillo

6

took an Uber from Piedmont Triad International Airport to the residence of Victim M.A. and retrieved gold bars from Victim M.A.

33.    It was further part of the conspiracy that, on or about the same date, GARCIA provided Miqui-Castillo with FedEx shipping labels to be used to ship the gold bars fraudulently obtained from Victim M.A. to conspirators.

34.    It was further part of the conspiracy that, on or about the same date, Miqui-Castillo, using the FedEx shipping labels provided by GARCIA, shipped the gold bars fraudulently obtained from Victim M.A. from a FedEx store in or around Greensboro, North Carolina.

35.    It was further part of the conspiracy that, on or about November 17, 2023, GARCIA transferred a total of approximately $3,500 via Zelle to Miqui-Castillo in exchange for retrieving and shipping the gold bars fraudulently obtained from victims.

### Victim S.S. in Fenton, Missouri

36.    It was part of the conspiracy that, in or around November 2023, conspirators contacted Victim S.S., a 76-year-old resident of Fenton, Missouri, in the Eastern District of Missouri, on multiple occasions and falsely represented their identities as representatives from Victim S.S.'s financial institutions. Conspirators falsely advised Victim S.S. that her financial accounts had been compromised, that her funds were being used by criminals to produce child pornography, and that Victim S.S. needed to pay money in order to prevent additional funds from being stolen.

37.    It was further part of the conspiracy that conspirators, through these false representations, caused Victim S.S. to transmit approximately $16,000 worth of cryptocurrency to conspirators.

38.    It was further part of the conspiracy that conspirators instructed Victim S.S. to

7

purchase gold bars and advised that a representative of Victim S.S.'s financial institution would pick up the gold bars at her residence.

39.   It was further part of the conspiracy that conspirators, through these false representations, caused Victim S.S. to purchase approximately $200,000 worth of gold bars.

40.   It was further part of the conspiracy that GARCIA offered money to Miqui-Castillo in exchange for traveling to the residence of Victim S.S. and retrieving gold bars from this victim.

41.   It was further part of the conspiracy that GARCIA instructed Miqui-Castillo on when, where, and how to retrieve the gold bars from Victim S.S. and where to deliver the gold bars to conspirators.

42.   It was further part of the conspiracy that GARCIA made a commercial flight reservation for Miqui-Castillo to travel from New Jersey, where he resided, to Fenton, Missouri for the purpose of retrieving gold bars from Victim S.S. and then shipping them to conspirators.

43.   It was further part of the conspiracy that, on or about November 17, 2023, Miqui-Castillo took a commercial flight from New Jersey to St. Louis Lambert International Airport in St. Louis, Missouri, in order to retrieve gold bars from Victim S.S.

44.   It was further part of the conspiracy that, after arriving in St. Louis, Miqui-Castillo took an Uber from St. Louis Lambert International Airport to Victim S.S.'s residence.

45.   It was further part of the conspiracy that, on or about the same date, GARCIA instructed Miqui-Castillo to ship to conspirators via FedEx the gold bars fraudulently obtained from Victim S.S.

46.   It was further part of the conspiracy that, on or about the same date, Miqui-Castillo attempted to retrieve gold bars from Victim S.S. and intended to ship those gold bars via FedEx to conspirators.

8

All in violation of Title 18, United States Code, Section 1349.

## FORFEITURE ALLEGATION

The Grand Jury further finds by probable cause that:

1.    Pursuant to Title 18, United States Code, Section 981(a)(1)(C) and Title 28, United States Code, Section 2461, upon conviction of an offense in violation of Title 18, United States Code, Sections 1341 or 1343, or conspiracy to commit such offense, as set forth in Count 1, the Defendant(s) shall forfeit to the United States any property, real or personal, which constitutes or is derived from proceeds traceable to such violation.

2.    Subject to forfeiture is a sum of money equal to the total value of property, real or personal, constituting or derived from any proceeds traceable to such violation.

3.    Specific property subject to forfeiture includes, but is not limited to, the following:

a.    Five (5) gold bars, shipped in three (3) FedEx packages with tracking numbers 786479119684, 786478627679, and 786479081036.

b.    Six (6) gold bars, shipped in two (2) FedEx shipments with tracking numbers 648296575612 and 648296575634.

4.    If any of the property described above, as a result of any act or omission of the Defendant(s):

a.    cannot be located upon the exercise of due diligence;

b.    has been transferred or sold to, or deposited with, a third party;

c.    has been placed beyond the jurisdiction of the court;

d.    has been substantially diminished in value; or

e.    has been commingled with other property which cannot be divided without difficulty,

9

the United States of America will be entitled to the forfeiture of substitute property pursuant to Title 21, United States Code, Section 853(p).

A TRUE BILL.

_____

FOREPERSON

SAYLER A. FLEMING
United States Attorney

_____

JONATHAN A. CLOW #68003MO
Assistant United States Attorney

10