UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, )<br>   )<br>   Plaintiff, )<br>   )<br>v.   )<br>   )<br>MICHAEL P. GARCIA,   )<br>   )<br>   Defendant. )<br>   )<br>   ) | Case No. 4:24-cr-00661-MTS |

**MEMORANDUM AND ORDER**

This matter is before the Court on the Government's Motion for Revocation of Release Order. Doc. [7]. Upon review of the complete record, the Court will grant the Government's Motion for Revocation of the Release Order, Doc. [7], and order Defendant be detained pending trial.

**I.     Findings of Fact**

December 18, 2024, Defendant Michael P. Garcia was charged by indictment with conspiracy to commit mail fraud and wire fraud, in violation of 18 U.S.C. § 1349. *See* Doc. [2].[1] As alleged in the Indictment, Defendant engaged in a conspiracy to defraud elderly victims throughout the United States by inducing them to transmit and provide money and other valuables, including gold bars, to the co-conspirators.[2]

---

[1] An arrest warrant was issued for Garcia the following day.

[2] Andy Miqui-Castillo was charged in a separate indictment with conspiracy to commit mail fraud and wire fraud. He has since pleaded guilty to that charge before Judge Sarah E. Pitlyk, United States District Court, Eastern District of Missouri, and he was sentenced on March 25, 2025. *U.S. v. Andy Miqui-Castillo*, Case No. 4:23-CR-00665-SEP (E.D. Mo.).

On February 28, 2025, Defendant was arrested in the Southern District of Florida pursuant to the arrest warrant. Defendant had an initial appearance on that same date. The Government made an oral motion for detention arguing that Defendant poses a serious risk of flight and that no conditions will assure his appearance. *See United States v. Michael Garcia*, Case No. 1:25-MJ-02388, Doc. [ 6], (S.D. Fla. Feb. 28, 2025).

A detention hearing was held in the Southern District of Florida on March 5, 2025, and continued to March 6, 2025. During the detention hearing, the Magistrate Judge ordered Defendant released, with a $25,000 personal surety bond, co-signed by his brothers. *See United States v. Michael Garcia*, Case No. 1:25-MJ-02388, Doc. [ 12], (S.D. Fla. Mar. 6, 2025). At the request of the Government, the Order of Release was stayed for 48 hours. The Government subsequently requested that this Court extend the stay of release so its Motion for Revocation of the Release Order could be heard in the Eastern District of Missouri. Doc. [8]. On March 7, 2025, this Court issued an Order extending the stay of release and ordered Defendant to be transported to the Eastern District of Missouri. Doc. [9]. On April 11, 2025, Defendant had his initial appearance and arraignment before Magistrate Judge Noelle C. Collins.

On April 23, 2025, this Court held a hearing on the Motion. At the hearing, the parties submitted their respective evidence by way of proffer. Argument was heard, and the matter was taken under submission by the Court. The Court has reviewed the entire record, including the motion for revocation of the release order and the response, the minute orders issued by two magistrate judges in the Southern District of Florida, *See United States v. Michael Garcia*, Case No. 1:25-MJ-02388, Doc. [ 4], (Feb. 28, 2025), and Doc. [12], (March 6, 2025), the Pretrial Services Report prepared for the Southern District of Florida (Florida Report), Doc. [19-1], and the Supplemental Pretrial Services Report prepared for the Eastern District of Missouri (Missouri

2

Report), Doc. [19].

## II. Legal Standard

Here, the Government made an oral motion for pretrial detention based on risk of flight. Doc. [122]. Pursuant to 18 U.S.C. § 3142(f)(2)(A), "[t]he judicial officer shall hold a hearing to determine whether any condition or combination of conditions set forth in subsection (c) of this section will reasonably assure the appearance of such person as required . . . -- (2) upon motion of the attorney for the Government … in a case that involves – (A) a serious risk that such person will flee[.].[3] As stated previously, a magistrate judge in Florida issued an order of pretrial release and then stayed it so this Court could hear the Government's motion for revocation of the release order. Under 18 U.S.C. § 3145(a)(1), the Government may file "a motion for revocation of the [release] order or amendment of the conditions of release." *United States v. Maull*, 773 F.2d 1479, 1481–82 (8th Cir. 1985) (en banc). A district judge reviewing a magistrate judge's pretrial order of release or detention must conduct a de novo review of that order. *Id.* "Reviewing without deference does not require the district court to start over in every case and proceed as if the magistrate's decision and findings do not exist." *United States v. Cook*, 87 F.4th 920, 924 (8th Cir. 2023) (cleaned up); *see* also *United States v. Stephenson*, 2025 WL 999557, *6 (N.D. Iowa Apr. 3, 2025) (discussing standard of review of detention decisions).

A court may order a defendant detained before trial "[o]nly if the government shows by clear and convincing evidence that no release condition or set of conditions will reasonably assure the safety of the community and by a preponderance of the evidence that no condition or set of conditions. . . will reasonably assure the defendant's appearance." *United States v. Kisling*, 334 F.3d 734, 735 (8th Cir. 2003) (first quoting *United States v. Orta*, 760 F.2d 887, 891 n.20 (8th Cir. 1985) (en banc)

---

[3] "[W]hile the § 3142(e)(1) and (g) inquiry is not identical to the § 3142(f)(2)(A) inquiry, many of the same considerations apply." *United States v. Cook*, 87 F.4th 920, 925 (8th Cir. 2023).

(emphasis in original)), then citing 18 U.S.C. § 3142(c), (e)-(f)). "'[E]ither danger to the community or risk of flight is sufficient to authorize detention.'" *United States v. Jeffers*, 2024 WL381978 *1 (E.D. Mo Aug. 14, 2024) (quoting *United States v. Cantu*, 935 F.2d 950, 952 (8th Cir. 1991) (cleaned up).

In determining whether there are conditions of release that will reasonably assure the defendant's appearance in court and the safety of the community, this Court looks to 18 U.S.C. § 3142(g), which provides that the Court "will take into account the available information concerning," 1) the nature and circumstances of the offense charged, 2) the weight of the evidence against the person, 3) the history and characteristics of the person, including- -

> (A) the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings; and
> (B) whether, at the time of the current offense or arrest, the person was on probation, on parole, or on other release pending trial, sentencing, appeal, or completion of sentence for an offense under Federal, State, or local law; and

4) the nature and seriousness of the danger to any person or the community that would be posed by the defendant's release.

The Court makes its written findings of fact and statement of the reasons for detention as contemplated in 18 U.S.C. § 3142(i)(1).

### III. Statement of Reasons for Detention

First, the Court considers the nature and circumstances of the offense charged and the weight of the evidence against Defendant. As stated previously, Defendant was charged with conspiracy to commit mail fraud and wire fraud for contacting elderly victims throughout the United States and making false representations to them to induce them to provide money and valuables to the co-

4

conspirators. The weight of the evidence against Defendant is overwhelming. The Indictment includes victims in Brooklyn, New York, Summerfield, North Carolina, and Fenton, Missouri. For instance, the co-conspirators contacted Victim S.S., a 76-year-old resident of Fenton, Missouri, on multiple occasions and falsely represented their identities as representatives from S.S.'s financial institutions. They falsely advised S.S. that her financial accounts had been compromised and her funds were being used by criminals to produce child pornography. They then told S.S. she needed to pay money to prevent additional funds from being stolen. The false representations of the co-conspirators caused S.S. to transmit approximately $16,000 worth of cryptocurrency to them and to purchase roughly $200,000 in gold bars for them to pick up at her residence. Co-conspirator Miqui-Castillo was arrested by the FBI as he arrived at the Fenton victim's residence to pick up the gold bars.

The FBI subsequently obtained a search warrant for Miqui-Castillo's phone.  On it, the FBI identified numerous text messages between Miqui-Castillo and Defendant, using a phone number for which Defendant was the subscriber.  In these messages, Defendant recruited Miqui-Castillo to pick up money and gold bars from victims in various states in exchange for money.  Miqui-Castillo then flew to these locations using airline tickets purchased with Defendant's credit card. After Miqui-Castillo picked up gold bars from victims, he shipped the gold bars via FedEx using shipping labels provided by Defendant via text message. Bank records show that Miqui-Castillo was paid for each pickup from Defendant's own bank account.  The FBI has also identified over $550,000 worth of money and gold bars that were picked up by Miqui-Castillo at Defendant's direction—a figure that does not include additional pickups and shipments by Defendant and  other co-conspirators. Based on his role and the seriousness of Defendant's offense, Defendant likely faces a substantial prison sentence in this case, which demonstrates a heightened motivation to flee. Further, the facts

5

surrounding Defendant's arrest for this offense demonstrate why he poses a risk of flight. Defendant's conduct during his arrest showed a flagrant disregard for following law enforcement commands. On the morning of February 28, 2025, multiple FBI agents responded to an apartment building in the Wynwood neighborhood of Miami, Florida, to arrest Defendant. The apartment in which he was located was on the building's second level, accessible only from an external balcony. Once agents were situated outside the apartment, an agent called Defendant by phone, informed him that agents were outside his apartment and had a warrant for his arrest, and ordered him to exit the apartment. Defendant refused and eventually hung up the phone. Agents called Defendant back and repeated the order to exit, but Defendant stated he would not vacate the apartment, claiming to not believe the agents. Instead, Defendant stated that he was calling his friends and relatives. Eventually, three different agents placed several calls to Defendant directing him to exit the apartment, and each time Defendant refused to comply by hanging up the phone, placing agents on hold, and even blocking one agent's phone number. For approximately one hour, Garcia refused multiple times to comply with repeated orders to exit the apartment. Agents gave orders to vacate the apartment over the phone, gave orders via text message, sounded sirens from law enforcement vehicles, and announced orders over loudspeaker. Only after a friend of Defendant arrived on the scene and spoke to Defendant over the phone did Defendant finally exit the apartment.

Next, the Court considers the history and characteristics of Defendant. According to the Florida Report, Doc. [19-1], Defendant has two prior convictions for resisting arrest without violence, relating to two separate incidents in 2007. Since that time, Defendant has a criminal history that includes charges for a variety of different offenses, including credit card fraud, burglary, and drug possession. Further, Defendant has failed to appear for court in previous criminal cases, and bench warrants were issued in 2014 and in 2021 after Defendant failed to appear on traffic charges. In fact,

6

as of the filing of the Government's Motion, Defendant had an active bench warrant issued for his arrest on December 4, 2024, on another driving with a suspended license case. Defendant has a documented history of failing to appear for court when directed to do so and of resisting arrest in this case.

As to Defendant's family ties, financial resources, and length of residency in the community, Defendant reported to the U.S. Pretrial Services Office that he had lived in Miami since 2023. However, it appears that Defendant has lived a nomadic lifestyle. He does not own or rent his own residence or have a stable place to stay with a friend or family member.[4] The apartment where police executed the warrant on February 28, 2025, was rented by his friend, but Defendant had only stayed there for not more than a week. Defendant's mother advised that he had been living in his truck prior to that. Defendant also indicated that he had previously lived in Oregon for several months in 2023 and had lived in Tennessee for several months in the past few years.[5] With regard to employment, Defendant reported being self-employed as a "freelance contractor" in Miami for the past 20 years but could not provide any specifics or verification of his business or income generated for inclusion in the Florida Report. The only other employment he mentioned was a plumbing company he worked for in Miami for a few months in 2024. Defendant's only asset listed in the Florida Report was a 2001 Chevy S-10 truck.

### IV. Conclusion

Given Defendant's history and characteristics, including his nomadic lifestyle, inability to

---

[4] Defendant's father is deceased. His mother lives in Tennessee as well as some of his six siblings. Other siblings live in various places including Florida, Texas, and possibly New York. Family members listed in the Florida Report advised that Defendant could not live with them.

[5] The Missouri Report indicated that if Defendant were released on bond, he would reside with his brother in Clarrange, Tennessee.

7

substantiate employment (despite claiming to own his own business for over twenty years), and lack of financial resources, taken together with Defendant's incentive to flee, illustrated by the weight of the evidence against him and given the potential of Defendant facing a substantial sentence, along with his history of failing to appear and resisting arrest, the Court finds that the circumstances warrant detention. Thus, the Government has shown by a preponderance of the evidence that Defendant presents a serious risk of flight if released, 18 U.S.C. § 3142(f)(2)(A), and that no condition or set of conditions will reasonably assure the appearance of Defendant. 18 U.S.C. § 3142(e)(1). The Court therefore concludes detention of the Defendant is appropriate pending trial.

Accordingly,

**IT IS HEREBY ORDERED** that the Government's Motion for Revocation of the Release Order, Doc. [7], is **GRANTED**.

**IT IS FURTHER ORDERED** that the Government's motion for pretrial detention, pursuant to 18 U.S.C. 3142(f)(2)(A), is **GRANTED**.

**Directions Regarding Detention**

The Defendant is remanded to the custody of the Attorney General or to the Attorney General's designated representative for confinement in a corrections facility separate, to the extent practicable, from persons awaiting or serving sentences or being held in custody. The Defendant must be afforded a reasonable opportunity for private consultation with defense counsel. On order of a court of the United States or on request of an attorney for the Government, the person in charge of the corrections facility must deliver the defendant to a United States Marshal for the purpose of an appearance in connection with a court proceeding.

Dated this 29th day of April, 2025.

_____
MATTHEW T. SCHELP
UNITED STATES DISTRICT JUDGE